## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 16-11179 |
| FOODSERVICEWAREHOUSE.COM, LLC<br>    *Debtor* | SECTION "A"<br>CHAPTER 7 |

### MOTION TO COMPROMISE WITH PRIDE CENTRIC RESOURCES, INC. f/k/a PRIDE MARKETING AND PROCUREMENT, INC.

**NOW INTO COURT**, through undersigned counsel, comes Ronald J. Hof (the "***Trustee***" of the "***Estate***") in his capacity as Chapter 7 Trustee for the bankruptcy estate of Foodservicewarehouse.com, LLC (the "***Debtor***" or "***FSW***"), who respectfully moves for Court approval of its compromise of certain causes of actions, claims, and remedies that it may asserted against Pride Centric Resources, Inc. f/k/a Pride Marketing and Procurement, Inc. pursuant to Federal Rule of Bankruptcy Procedure 9019, and other third-party entities listed in Exhibit "A" attached to this Motion.

**General Background**

1. On May 20, 2016 (the "***Petition Date***"), FSW filed its voluntary petition under Chapter 11 of Title 11, United States Code in the United States Bankruptcy Court for the Eastern District of Louisiana (the "***Court***"), thereby commencing Bankruptcy Case Number 16-11179 (the "***FSW Bankruptcy***"). On October 12, 2016 the FSW Bankruptcy was converted to one under Chapter 7, and Ronald J. Hof was appointed as chapter 7 trustee for the Estate.

2. On September 15, 2016, IberiaBank filed its Proof of Claim Number 170-1 into the Claims Registry of the FSW Bankruptcy, therein asserting a secured claim in the amount of $828,640.40.

3. On September 19, 2016, PRIDE filed its Proof of Claim Number 209-1 into the Claims Registry of the FSW Bankruptcy, therein asserting a claim in the amount of $32,624,563.93 (the "**PRIDE Claim**"). PRIDE asserts a secured claim for a portion of this amount (approximately $15,700,00.00), as a subrogee to the claim of IberiaBank. The balance of the amounts due represent loans PRIDE made to FSW or payments of FSW's debts directly by PRIDE on FSW's account. The PRIDE Claim has been amended twice, once on September 19, 2016 and again on January 19, 2017, but the monetary amount has not changed.

4. On January 25, 2017, IberiaBank filed its Proof of Claim Number 170-2, thereby Amending Proof of Claim Number 170-1, into the Claims Registry of the FSW Bankruptcy, therein reducing its asserted secured claim to $430,940.40.

5. As of the filing of the instant motion, the unsecured claims estimate of record in this matter are approximately $72 million.

6. As of the filing of the instant motion and without the compromise proposed herein in place, PRIDE's claim comprises approximately half of the claims of record in the FSW Bankruptcy.

### The Trustee's Claims Against PRIDE and PRIDE's Defenses

7. FSW was a member of PRIDE, and many of the members of FSW were also PRIDE shareholders. In addition, there was overlap between the members of the PRIDE Board of Directors and the FSW Management Committee. For these reasons, and others, the Trustee conducted an investigation into the nature of the relationship between PRIDE and FSW.

8. Following its investigation, the Trustee is prepared to assert the following claims, causes of action, and remedies against PRIDE:

9. **Substantive Consolidation**. If the Trustee was successful, the remedy of substantive consolidation would combine PRIDE with the Estate, making PRIDE's assets available for liquidation and eliminating the claims between PRIDE and FSW. PRIDE would be liquidated to pay the Debtor's creditors and the PRIDE Claim would be eliminated. The Trustee contends that substantive consolidation is appropriate because the Debtor was allegedly operated byPRIDE or as an instrumentality of PRIDE. Further, the Trustee contends that third-parties considered the Debtor to be part of PRIDE. PRIDE disputes that substantive consolidation is appropriate as the entities were separate and independent, and that, even if the factors supporting substantive consolidation were met, such remedy provides no benefit to the Estate given PRIDE's limited assets.

10. **Alter Ego/Instrumentality/Veil Piercing/Single Business Enterprise**. If the Trustee were successful, these remedies would also allow the Debtor's creditors to be paid from PRIDE's assets. As with the remedy of substantive consolidation claim, PRIDE disputes that the factors supporting such remedies have been met.

11. **Equitable Subordination**. The Trustee also contends that, in the alternative, he could seek equitable subordination of PRIDE's claim to that of the general unsecured creditors under Section 510(c). PRIDE disputes that equitable subordination is appropriate and maintains that such remedy is reserved only for lenders who use their position to prefer themselves over others. PRIDE points to its pre-petition payments of over $32 million and avers that, but for these payments, the current claims against the Estate would be more than double.

### The Trustee's Avoidance Actions

12. To date, the Trustee has sent approximately 300 demand letters for the return of potentially avoidable transfers. From those demand, the Trustee has received $327,004.02 from nine entities returning the amounts in full. Under the proposed settlement, the Trustee will refund all such payments made by the entities and individuals listed on Exhibit "A" to the Settlement Agreement, which entities and individuals PRIDE has identified (the "PRIDE Related Parties").

### Relief Requested

13. To avoid costly and time-consuming litigation and generate the greatest benefit to the Estate in the most efficient, cost-effective, and expedient manner, this Motion seeks entry of an Order from the Court approving the Settlement Agreement attached hereto as **Exhibit "1"** between the Trustee, on behalf of the Estate, and PRIDE, and authorizing the Trustee to effectuate same.

14. FED. R. BANKR. P. 9019(a) provides that the court may approve a compromise on a trustee's motion after notice and a hearing. A compromise in a bankruptcy should be approved only if the compromise is "fair and equitable and in the best interest of the estate."[1] A bankruptcy court considering approval of a proposed settlement must evaluate:

   a. The probability of success in the litigation, with due consideration for the uncertainty in fact and in law;

   b. The complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and

   c. All other factors bearing on the wisdom of the compromise.[2]

---

[1] *Id.* (citing *In re Foster Mortgage Co.*, 68 F.3d 914, 917 (5th Cir. 1995); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980)).

[2] *Id.* (citing *Jackson Brewing*, 624 F.2d at 602).

With regard to part three of this analysis, the Fifth Circuit has specified two factors that bear upon the decision to approve a compromise and thus should be considered by this Court: (a) the best interest of the creditors, "with proper deference to their reasonable views" and (b) "the extent to which the settlement is truly the product of arms-length negotiations and not of fraud or collusion."[3] In other words, "[t]o assure a proper compromise, the bankruptcy judge must be apprised of all the necessary facts for an intelligent, objective and educated evaluation."[4]

15. A trustee's opinion is entitled to great weight.[5] However, the court should independently evaluate the reasonableness of the proposed compromise.[6] Because compromises are favored in bankruptcy, bankruptcy courts have substantial discretion to approve compromises.[7] Ultimately, the Court should approve the settlement if it finds that the Trustee exercised appropriate business judgment.[8]

**The Settlement**

---

[3] *Id.* at 356 (citing *In re Foster Mortgage Corp.*, 68 F.3d 914, 917-18 (5th Cir. 1995)).

[4] *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

[5] *See id.* (citing *Matter of Cajun Elec. Power Co-op, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) ("The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision…"); other internal citations omitted).

[6] *See id.* (internal citations omitted).

[7] *See In re A&C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986); *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). *See also In re MGS Marketing, Inc.*, 111 B.R. 264, 266-67 (9th Cir. B.A.P. 1990) ("Approving a proposed compromise is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors."); *In re Stein*, 236 B.R. 34, 37 (D. Or. 1999) ("Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy; therefore, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion.").

[8] *See In re Indian Motorcycle, Inc.*, 289 B.R. 269, 283 (1st Cir. 2003) ("Compromises are generally approved if they meet the business judgment of the trustee [or debtor in possession]."). *See also In re Dalen*, 259 B.R. 586, 609-15 (W.D. Mich. 2001) (applying business judgment rule to process of approving settlement proposed by bankruptcy trustee or debtor-in-possession).

16. While interested parties are directed to the attached Settlement Agreement for its terms, the salient terms and a discussion thereof are provided in the immediately following paragraphs.

17. PRIDE and the Estate have agreed to reduce and fix the allowed amount of the PRIDE Claim as follows:

   a. By virtue of PRIDE's rights of subrogation to the allowed secured claim of Iberiabank, if and only if IberiaBank's claim is paid in full, PRIDE shall then be entitled to an allowed secured claim of up to a maximum of $5,000,000.00 (the "*Allowed PRIDE Secured Subrogation Claim*"). PRIDE shall not be entitled to any deficiency unsecured claim arising from failure to collect the maximum amount of the Allowed PRIDE Secured Subrogation Claim from the collateral securing such claim, and shall only be entitled to receive and recover on account of the Allowed PRIDE Secured Subrogation Claim the proceeds from the disposition of collateral securing such Allowed PRIDE Secured Subrogation Claim.

   b. PRIDE shall be entitled to an allowed general unsecured claim in the total amount of $10,000,000.00 (the "*Allowed PRIDE Unsecured Claim*"). The Allowed PRIDE Unsecured Claim shall be entitled to its pro rata, in pari passu, distribution of the proceeds of the Estate for all purposes, save and except for any distribution made by the Estate of any proceeds realized from the Estate's claim against the Debtor's former accountants LaPorte, A Professional Accounting Corporation ("*LaPorte*") (the proceeds of such claims being the "*LaPorte Proceeds*"). With regard to a distribution of the LaPorte Proceeds by the Estate, the Allowed PRIDE Unsecured Claim shall be reduced as follows: (i) first the Allowed PRIDE Unsecured Claim shall be reduced by $5,000,000.00; (ii) then the Allowed PRIDE Unsecured Claim shall be reduced further by the amount of any proceeds collected by PRIDE as a result of the Allowed PRIDE Secured Subrogation Claim, and finally; (iii) then the Allowed PRIDE Unsecured Claim shall be reduced by the amount of any distribution received by PRIDE from the Estate on account of its Allowed PRIDE Unsecured Claim. By way of example, if PRIDE collects $1,000,000 on account of the Allowed PRIDE Secured Subrogation Claim, and further, PRIDE receives a $500,000 distribution from the Estate from proceeds other than the LaPorte Proceeds, then with regard to its portion of any distribution of the LaPorte Proceeds, the Allowed PRIDE Unsecured Claim would be fixed for those purposes at $3,500,000.00 ($10,000,000 - $5,000,000 - $1,000,000 - $500,000 = $3,500,000).

18. As to the PRIDE Related Parties, the Trustee has agreed (a) not to pursue avoidance actions against such persons pursuant to 11 U.S.C. §§ 547, 548, and 549, other than

defensively, and (b) to return all amounts received from such persons in response to the Trustee's avoidance demand, while, so as to preserve the Estate's claims while the Parties seek approval of the instant settlement from the Court, PRIDE has agreed to make all reasonable efforts to obtain a Tolling Agreement from them, which Tolling Agreement will toll the Trustee's claims against such persons imposed under, *inter alia*, Rule 7001 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Code §§541 through 553, and claims under State, Federal and common law through and until June 20, 2018. The Trustee's § 546 deadline is May 20, 2018 and, without the settlement contemplated herein, the Trustee intends to commence approximately 200 adversary complaints on or before such date to avoid pre-petition transfers, approximately 160 of which are those included in Exhibit "A" to the Settlement Agreement.

19. The Trustee has also agreed to modification of the automatic stay [11 U.S.C. § 362] to the extent necessary for PRIDE to assist the Trustee in collecting any of the Estate's accounts receivable, which are the collateral of IberiaBank, with any proceeds collected thereon to be applied as follows (a) first, to retire any remaining amounts due IberiaBank on its allowed secured claim, (b) second, to PRIDE on its Allowed Secured Subrogation Claim, and (c) to the Estate. Per the terms of the Settlement Agreement, the initial $220,000.00 in collection proceeds to be applied under Paragraph (b), above, if any, shall be divided equally between the Estate and PRIDE. Additionally, the Estate shall be reimbursed out of all collection proceeds if any, for its reasonable, allowed professional fees and costs, as well as the Trustee's commission, that are allocable to the collection efforts. Because the Debtor's Accounts Receivable have at all times been the known collateral of IberiaBank and, once paid in full, PRIDE's collateral because of PRIDE's subrogation claim, in addition to the insufficient accounting records in the Trustee's possession, the Trustee has never considered the Debtor's Accounts Receivable to be an asset

subject to successful liquidation. As such, and because the Estate will benefit from any amounts realized above the security interest in such assets, the Trustee does not consider such concession to have any adverse effect on the Estate.

20. PRIDE has agreed to enter into a Tolling Agreement with the Trustee, which Tolling Agreement will toll the Trustee's claims against PRIDE imposed under, *inter alia*, Rule 7001 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Code §§541 through 553, and claims under State, Federal and common law through and until June 20, 2018. This will provide the Trustee time to commence suit in the event the proposed settlement is not approved ahead of his § 546 deadline.

21. PRIDE and the Trustee will cooperate, to the best of their abilities and with each party bearing its own expenses, to provide data, information, documents and other assistance reasonably requested by the other party to facilitate each party's efforts regarding the following mutually beneficial goals: (a) the Trustee's recovery of avoidable transfers, (b) PRIDE's collection of the Estate's Accounts Receivable and (c) the reduction or elimination of unwarranted proofs of claim. This provision will remedy the Trustee's concern that PRIDE is in possession of documents necessary to the Estate's administration, and also align the Parties for success with their mutually beneficial objectives. The Parties specifically preserve all claims held by each of them individually, against LaPorte.

**Analysis of the Settlement**

22. PRIDE is the Estate's single largest creditor, with a proof of claim totaling close to $33mm in a pool of claims totaling close to $72mm. The Estate is currently compromised of roughly $3.2mm in cash. The remaining assets of the Estate are by nature contingent litigious rights. Under the proposed settlement, PRIDE's recovery is bifurcated according to the proceeds

being distributed. As the Trustee believes that the LaPorte Claim the most valuable contingent asset remaining in the Estate, he negotiated with PRIDE to retain a lesser percentage of such a recovery.

23. In order to illustrate the effects of the proposed settlement, The Trustee has prepared the following charts for a hypothetical initial distribution of $3mm,[9] followed by another distribution of the LaPorte Proceeds of $5mm, to the general unsecured class and how those distributions would affect (a) PRIDE and (b) a hypothetical creditor holding an allowed $1mm unsecured claim. The reason for the two-step hypothetical distribution in the charts is that it mirrors the distribution that the Trustee hopes to eventually make to the unsecured class. That said, please note that these hypotheticals are forward-looking projections, and, as such, are useful for illustrative purposes only. The Trustee could, for instance, receive nothing on his LaPorte Claim, thereby obviating any additional distribution.

|  | First Distribution | Second Distribution |
|---|---|---|
| Total Claims | $ 71,738,149.08 | $ 68,738,149.08 |
| Distribution | $ 3,000,000.00 | $ 5,000,000.00 |
| Hypothetical Creditor | $ 1,000,000.00 | $ 1,000,000.00 |
| Hypothetical Creditor % | $ 0.0139 | $ 0.0145 |
| Hypothetical Creditor Recovery | $ 41,818.75 | $ 72,739.81 |
| Pride | $ 32,624,563.93 | $ 32,624,563.93 |
| Pride % | $ 0.4548 | $ 0.4746 |
| Pride Recovery | $ 1,364,318.61 | $ 2,373,104.63 |

Thus, as things currently stand, absent the proposed settlement, of a $3mm distribution to unsecured creditors, PRIDE would receive 45 percent or $1,364,318.61, and our hypothetical creditor would receive 1.39 percent or $41,818.75. Should the estate realize significantly from

---

[9] Any actual distribution would be of cash on hand, which would include reductions for allowed administrative and other priority expenses and claims, and additions by virtue of recovery on retained claims and causes of action. Because of this, the actual number for a future distribution is impossible to calculate at the present time. But for purposes of examining the propriety of the settlement, the Trustee has chosen a hypothetical figure of $3 Million.

the LaPorte Claim and be able to distribute an additional $5mm, then PRIDE's recovery increases (due to the reduction of the initial $3mm from the total claims) proportionately to 47.46 percent for an additional $2,373,104.63 and our hypothetical creditor's to 1.45 percent for an additional $72,739.81. This illustration in the baseline analysis against which we compare the proposed settlement.

24. The Trustee believes that the following models are illustrative of how our hypothetical creditor would fare under the proposed settlement. First, a comparison of the initial $3mm distribution, directly comparable to the left side of the previous chart (which is reproduced for ease of comparison):

|  | First Distribution | Proposed Settlement |
|---|---|---|
| Total Claims | $ 71,738,149.08 | $ 49,113,585.15 |
| Distribution | $ 3,000,000.00 | $ 3,000,000.00 |
| Hypothetical Creditor | $ 1,000,000.00 | $ 1,000,000.00 |
| Hypothetical Creditor % | $ 0.0139 | $ 0.0204 |
| Hypothetical Creditor Recovery | $ 41,818.75 | $ 61,082.90 |
| Pride | $ 32,624,563.93 | $ 10,000,000.00 |
| Pride % | $ 0.4548 | $ 0.2036 |
| Pride Recovery | $ 1,364,318.61 | $ 610,828.96 |

Thus, under the proposed settlement, our hypothetical creditor's initial recovery increases from 1.39 percent and $41,818.75 to 2.04 percent and $61,082.90. PRIDE's initial recovery, on the other hand, decreases from 45.48 percent and $1,364,318.61 to 20.36 percent and $610,828.96.

As for the second hypothetical distribution of $5mm:

|  | Second Distribution | Proposed Settlement |
|---|---|---|
| Total Claims | $ 68,738,149.08 | $ 41,113,585.15 |
| Distribution | $ 5,000,000.00 | $ 5,000,000.00 |
| Hypothetical Creditor | $ 1,000,000.00 | $ 1,000,000.00 |
| Hypothetical Creditor % | $ 0.0145 | $ 0.0243 |
| Hypothetical Creditor Recovery | $ 72,739.81 | $ 121,614.30 |
| Pride | $ 32,624,563.93 | $ 4,389,171.04 |
| Pride % | $ 0.4746 | $ 0.1068 |
| Pride Recovery | $ 2,373,104.63 | $ 533,785.98 |

Thus, under the proposed settlement, our hypothetical creditor's LaPorte Proceeds recovery increases from 1.45 percent and $72,739.81 to 2.43 percent and $121,614.30. PRIDE's LaPorte Proceeds recovery, on the other hand, decreases from 47.46 percent and $2,373,104,63 to 10.68 percent and $533,785.98.

25. The following chart is the Trustee's summary of the total effect of the proposed settlement:

| Total Distributions | Absent Settlement | With Settlement |
|---|---|---|
| PRIDE | $ 3,737,423.24 | $ 1,144,614.93 |
| Hypothetical Creditor | $ 102,901.65 | $ 182,697.20 |

The proposed settlement results in a 69 percent reduction in PRIDE's recovery in favor of all allowed unsecured creditors. It is against this financial analysis that the proposed settlement must be measured: The proposed settlement reduces PRIDE's total distribution under the two hypothetical distributions totaling $8mm from 47 percent to 14 percent. Concomitantly, it increases our hypothetical creditor's recovery by 56%, from 1.29 percent to 2.28 percent.

26. A crucial factor in favor of the proposed settlement is the length of time and amount of money that litigating the Estate's claims against PRIDE will consume. The Trustee's causes of action against PRIDE will be time-consuming, fact-intensive and expensive. And the primary remedy requested – substantive consolidation – is extraordinary relief that is not often

granted by the court. Should the Trustee bring these claims and lose, then the Estate will bear the full amount of PRIDE's claims and will have spent a considerable amount of Estate funds in order to receive nothing in return.

27. Perhaps even more significantly, the Trustee considers his claims against PRIDE as primarily *defensive* in nature as the claims are not likely to lead to the recovery of assets for the estate, but will instead be used to eliminate or reduce PRIDE's claim against the estate. PRIDE is by nature a "co-op," meaning that it is a juridical entity formed to aggregate purchases and savings for its shareholders. As a "pass-through" entity, it is unlikely that PRIDE would have any assets available for seizure should the Trustee obtain a money judgment. Thus, litigation with PRIDE is not likely to provide any actual monetary return to the Estate while further reducing any benefit the Estate would receive from a successful outcome by the additional, and likely significant, legal costs and fees. While the Trustee recognizes the value of such claims even still, as the unsecured creditors would receive a greater distribution were the Trustee was successful on such claims, the Trustee considers the proposed settlement with PRIDE to provide a more immediate generation of that same result without any further expense, uncertainty and inconvenience. In short, the Trustee believes that the resolution proposed herein will strengthen the Estate's ability to maximize recovery to the Debtor's creditors and will provide certainty and finality in the most cost-efficient manner.

28. While the Trustee's claims against those on the Exhibit which he would otherwise initiate suit are significant, the Trustee must realistically consider potential defenses to those actions, most of which have been impossible for the Trustee's forensic accountant to calculate due to the state of the Debtor's books and records. Given the significant reduction in the PRIDE Claim realized from this settlement, the removal of any uncertainty and risk involved in future

litigation, and anticipated costs to the Estate in proceeding against these individuals and foregoing the proposed settlement, the Trustee considers the benefit to the Estate realized from the proposed settlement to far outweigh the alternative.

29. Finally, the Trustee asserts that the Proposed Settlement Agreement is the result of a lengthy, exhaustive and arms-length negotiations between the Trustee and PRIDE, and does not represent any fraud or collusion between the parties.

30. Considering the Proposed Settlement Agreement terms and the cost associated with litigating the issues presented, the Trustee suggests that this Proposed Settlement Agreement is fair and equitable and in the best interest of the Estate and its creditors and should thus be granted.

[*Signature continued to following page.*]

**WHEREFORE**, the Trustee prays that this Court approve the compromise outlined herein and attached hereto as Exhibit "1" and authorize the Trustee to effectuate same with PRIDE, and for any such other relief deemed just.

Respectfully Submitted,

**STEWART ROBBINS & BROWN, LLC**
301 MAIN STREET
SUITE 1640
BATON ROUGE, LA 70801
225-231-9998 PHONE
225-709-9467 FAX

By: */s/ Paul Douglas Stewart, Jr.*
P. Douglas Stewart, Jr. (#24661)
dstewart@stewartrobbins.com
Brooke W. Altazan (La. #32796)
baltazan@stewartrobbins.com

*Counsel for Ronald J. Hof, Chapter 7 Trustee for the Bankruptcy Estate of Foodservicewarehouse.com, LLC*