## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE:                          CASE NO. 16-11179

**FOODSERVICEWAREHOUSE.COM, LLC**     SECTION "A"
       *Debtor*

                                           CHAPTER 7

---

### SETTLEMENT AGREEMENT

---

**THIS SETTLEMENT AGREEMENT** ("*Settlement Agreement*") is entered into by and between Ronald J. Hof (the "*Trustee*") in his capacity as Chapter 7 Trustee for the bankruptcy estate of Foodservicewarhouse.com, LLC (the "*Estate*") and PRIDE Centric Resources, Inc. f/k/a PRIDE Marketing and Procurement, Inc. ("*PRIDE*") (together, the Trustee and PRIDE are referred to herein as the "*Parties*") as follows:

### RECITALS:

**WHEREAS**, PRIDE is a consortium/buying group in the foodservice industry and comprised of approximately 126 foodservice and food-retail equipment dealer-shareholders, each of which hold a single share of stock in PRIDE entitling them to certain benefits of ownership. Namely, the PRIDE dealer-shareholders purchase product in substantial volume through PRIDE and thereby capitalize on more advantageous vendor pricing and manufacturer rebates. In short, PRIDE aggregates the orders of its dealer-shareholders when making purchases directly from a vendor, taking advantage of volume discounts otherwise unavailable to individual and unaffiliated dealers.

**WHEREAS**, in January of 2006, the food supply industry was changing - several internet companies were accumulating substantial market share and the larger companies within



the industry continued to expand and as a result Foodservicewarehouse .com Inc. ("*FSW*" or "*Debtor*") was formed.

**WHEREAS**, on February 28, 2007, Roger E. Boyles, in his capacity as President of FSWI, executed the Amended and Restated Shareholder Agreement of PRIDE, through which agreement FSWI became a PRIDE shareholder.

**WHEREAS**, on October 1, 2014, FSW was converted to a Colorado limited liability company and took the name Foodservicewarehouse.com, LLC.

**WHEREAS**, on October 08, 2014, FSW converted from a Colorado limited liability company to a Delaware limited liability company.

**WHEREAS**, on May 20, 2016 (the "*Petition Date*"), FSW filed its voluntary petition under Chapter 11 of Title 11, United States Code in the United States Bankruptcy Court for the Eastern District of Louisiana (the "*Court*"), thereby commencing Bankruptcy Case Number 16-11179 (the "*FSW Bankruptcy Case*"). On October 12, 2016, the FSW Bankruptcy Case was converted to one under Chapter 7, and Ronald J. Hof was appointed as chapter 7 trustee for the Estate.

**WHEREAS**, on September 19, 2016, PRIDE filed Proof of Claim Number 209-1 into the Claims Registry of the FSW Bankruptcy Case, therein asserting a claim in the amount of $32,624,563.93 (the "*PRIDE Claim*"). The PRIDE Claim has been twice amended, once on September 19, 2016 and again on January 19, 2017, but never changing the monetary value attributed to it.

**WHEREAS**, the Trustee contends that he has certain claims against PRIDE which he could successfully pursue, including, but not limited to, substantive consolidation, equitable subordination, alter ego, instrumentality, veil piercing, single business enterprise, and stay

violations. The Trustee also contends that he has viable avoidance claims against certain of PRIDE's dealer-shareholders and vendors upon which he would be successful if prosecuted.

**WHEREAS**, PRIDE contends that it, its dealer-shareholders, and its vendors have defenses to the Trustee's causes of action and that the Trustee's pursuit of such would be detrimental to the Estate, to PRIDE's business operations and that of its dealer-shareholders'.

**WHEREAS**, the Parties desire to settle the issues relating to the Parties' claims against each other according to the terms and conditions set out herein.

**AGREEMENT:**

For and in consideration of this Settlement Agreement, and of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     _Waiver and Release of Certain Claims by Trustee._  The Trustee agrees to compromise, settle, release, discharge and extinguish any and all claims against PRIDE not specifically preserved herein and which the Trustee could have reasonably asserted against PRIDE as of the date of this agreement. Additionally, as to the entities and individuals listed on the attached **Exhibit A**, the Trustee will agree (a) not to pursue avoidance actions against such persons pursuant to 11 U.S.C. §§ 547, 548, and 549, other than defensively, and (b) to return all amounts received from such persons in response to the Trustee's avoidance demand.

2.     _Waiver and Release of Claims by PRIDE._ PRIDE agrees to compromise, settle, release, discharge and extinguish any and all claims against the Trustee and his agents not specifically preserved herein and which were or could have been asserted against the Trustee and/or his agents as of the date of this agreement.

3. <u>Calculation and Bifurcation of the PRIDE Claim.</u> PRIDE and the Estate agree to reduce and fix the allowed amount of the PRIDE Claim as provided in this paragraph. (a) By virtue of PRIDE's rights of subrogation to the allowed secured claim of IberiaBank, if and only if IberiaBank's claim is paid in full, PRIDE shall then be entitled to an allowed secured claim of <u>up to</u> a maximum of $5,000,000.00 (the "*Allowed PRIDE Secured Subrogation Claim*"). PRIDE shall not be entitled to any deficiency unsecured claim arising from failure to collect the maximum amount of the Allowed PRIDE Secured Subrogation Claim from the collateral securing such claim, and shall only be entitled to receive and recover on account of the Allowed PRIDE Secured Subrogation Claim the proceeds from the disposition of collateral securing such Allowed PRIDE Secured Subrogation Claim. (b) PRIDE shall be entitled to an allowed general unsecured claim in the total amount of $10,000,000.00 (the "*Allowed PRIDE Unsecured Claim*"). The Allowed PRIDE Unsecured Claim shall be entitled to its pro rata, in pari passu, distribution of the proceeds of the Estate for all purposes, save and except for any distribution made by the Estate of any proceeds realized from the Estate's claim against the Debtor's former accountants LaPorte, A Professional Accounting Corporation ("*LaPorte*") (the proceeds of such claims being the "*LaPorte Proceeds*"). With regard to a distribution of the LaPorte Proceeds by the Estate, the Allowed PRIDE Unsecured Claim shall be reduced as follows: (i) first the Allowed PRIDE Unsecured Claim shall be reduced by $5,000,000.00; (ii) then the Allowed PRIDE Unsecured Claim shall be reduced further by the amount of any proceeds collected by PRIDE as a result of the Allowed PRIDE Secured Subrogation Claim, and finally; (iii) then the Allowed PRIDE Unsecured Claim shall be reduced by the amount of any distribution received by PRIDE from the Estate on account of its Allowed PRIDE Unsecured Claim. By way of example, if PRIDE collects $1,000,000 on account of the Allowed PRIDE Secured Subrogation

Claim, and further, PRIDE receives a $500,000 distribution from the Estate from proceeds other than the LaPorte Proceeds, then with regard to its portion of any distribution of the LaPorte Proceeds, the Allowed PRIDE Unsecured Claim would be fixed for those purposes at $3,500,000.00 ($10,000,000 - $5,000,000 - $1,000,000 - $500,000 = $3,500,000).

      4.      <u>Collection of IberiaBank or PRIDE collateral.</u> The Trustee and PRIDE will jointly collect the Estate's receivables. The Trustee consents to modification of the 11 U.S.C. § 362 automatic stay to the extent necessary for PRIDE to assist in the collection efforts. Any such collections shall be applied as follows (a) first, to retire any remaining amounts due IberiaBank on its allowed secured claim, (b) second, to PRIDE on its Allowed Subrogation Claim, and (c) to the Estate. The initial $220,000.00 in collection proceeds to be applied under ¶ (b), above, if any, shall be divided equally between the Estate and PRIDE. Additionally, the Estate shall be reimbursed out of all collection proceeds, if any, for its reasonable, allowed professional fees and costs, as well as Trustee's commission, that are allocable to the collection efforts. The Trustee shall account monthly to PRIDE for all such collections and PRIDE shall make any necessary amendments to its proof of claim on at least a semi-annual basis.

      5.      <u>Cooperation toward efforts beneficial to the Estate.</u> PRIDE and the Trustee will cooperate, to the best of their abilities and with each party bearing its own expenses except as otherwise provided herein, to provide data, information, documents and other assistance reasonably requested by the other party to facilitate each Party's efforts regarding the following mutually beneficial goals: (a) the Trustee's recovery of avoidable transfers, (b) the collection of accounts receivable and (c) the reduction or elimination of unwarranted proofs of claim.

      6.      <u>PRIDE Tolling Agreement.</u> PRIDE will enter into a Tolling Agreement with the Trustee, which Tolling Agreement will toll the Trustee's claims against them imposed under,

inter alia, Rule 7001 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Code §§541 through 553, and claims under State, Federal and common law through and until June 20, 2018.

7.      Other Tolling Agreements. So as to preserve the Estate's claims while the Parties seek approval of the instant settlement from the Court, PRIDE will make all reasonable effort to obtain from the entities and individuals listed on Exhibit A to this Settlement Agreement a Tolling Agreement, which Tolling Agreement will toll the Trustee's claims against them imposed under, inter alia, Rule 7001 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Code §§ 541 through 553, and claims under State, Federal and common law through and until June 20, 2018.

8.      Preservation of Claims. The Parties specifically preserve all claims held by each of them, respectively, against LaPorte.

9.      Sufficiency of Consideration and other Settlement Matters. The Parties hereto acknowledge and agree that the promises and obligations set forth herein are supported by sufficient and adequate consideration. The Parties acknowledge and agree that they have thoroughly considered all aspects of this Settlement Agreement, that they have discussed this Settlement Agreement and its implications with their attorneys, that they have carefully read and fully understand all of the provisions of this Settlement Agreement and that they are voluntarily entering into this Settlement Agreement. Nothing in this Agreement shall release any party from any obligation arising under this Settlement Agreement.   Further, it is stipulated and agreed to by the undersigned that this Settlement Agreement shall not operate as an admission of liability on the part of anyone. The settlement set forth herein reflects and represents the compromise of disputed claims, and this Settlement Agreement is entered into solely to avoid the uncertainty, inconvenience and expense of litigation.

10.     Parties Bear Own Expenses Related to Litigation and Settlement. The Parties agree that, unless otherwise specifically provided herein, each party will bear its own attorneys' and other fees, expenses and disbursements incurred by or on behalf of such party in connection with this matter.

11.     Assignment. No party hereto shall have the right to assign, in whole or in part, its interest in this Settlement Agreement or any of its respective rights or obligations hereunder. Subject to foregoing, this Settlement Agreement shall be binding upon the Parties hereto and their successors and permitted assigns.

12.     Whole Agreement: Effect on Other Agreements. There are no other agreements, arrangements or understandings between the Parties hereto regarding the subject matter of this Settlement Agreement.     This Settlement Agreement supersedes all previous contracts, agreements and understandings between the Parties respecting the subject matter of this Settlement Agreement. As between the Parties, no oral statements or prior written materials respecting the subject matter hereof shall be of any force and effect. This Settlement Agreement shall not be modified or amended except by a written document executed by all Parties to this Settlement Agreement.

13.     Notices. All notices, consents, waivers and other communications under this Settlement Agreement must be in writing and will be deemed to have been duly given when (i) delivered by hand, (ii) the first to occur of actual receipt by the addressee or 72 hours after being placed in the United States mail, postage prepaid, registered or certified mail, return receipt requested, or (iii) when received by the addressee, if sent by a nationally recognized overnight delivery service, prepaid, in each case to the appropriate addresses set forth below (or to such other addresses as a party may designate by notice to the other Party): (a) if to the Trustee, Brooke W. Altazan, Stewart Robbins & Brown, LLC, 301 Main Street, Suite 1640, Baton

Rouge, LA 70801 and (b) if to PRIDE, Jan Hayden; Baker, Donelson, Bearman, Caldwell & Berkowitz, PC; 201 St. Charles Avenue, Suite 3600; New Orleans, LA 70170.

14. **Waiver of Provisions; Remedies Cumulative.** The waiver of any of the terms and conditions of this Settlement Agreement shall not be construed as a waiver of any other terms and conditions hereof. No remedy set forth in this Settlement Agreement or otherwise conferred upon or reserved to any party shall be considered exclusive of any other remedy available to any party, but the same shall be distinct, separate and cumulative and may be exercised from time to time as often as occasion may arise or as may be deemed expedient.

15. **Language Construction; Headings.** The language in all parts of this Settlement Agreement shall be construed, in all cases, according to its plain meaning, and each party hereto acknowledges that such party and its counsel have reviewed this Settlement Agreement and have actively participated in its drafting. Accordingly, the Parties agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be applied in the interpretation of this Settlement Agreement. The headings used herein are for reference only and shall not limit or control the meaning or interpretation of any provision hereof.

16. **No Third-Party Beneficiaries.** Other than as set forth herein, none of the obligations and duties of any party under this Settlement Agreement shall in any way or in any manner be deemed to create any obligation to, or any rights in, any person or entity not a party to this Settlement Agreement.

17. **Taxes.** Each party shall be responsible for (i) determining her or its own tax consequences associated with this settlement; and (ii) the payment of any taxes that may be due and owing by such party as a consequence of this settlement.

18. **Counterparts.** This Settlement Agreement may be executed in any number of counterparts, each and all of which shall be deemed an original and all of which together shall constitute one and the same instrument. The exchange of copies of this Settlement Agreement and executed signature pages hereto by facsimile transmission or electronic mail shall constitute effective execution

and delivery of this Settlement Agreement and may be used in lieu of the original Settlement Agreement for all purposes.

19.    Authorization.  This Settlement Agreement will not be effective until approved by the United States Bankruptcy Court for the Eastern District of Louisiana.  The signatories to this Settlement Agreement represent that they have the authority to bind the Parties on whose behalf they are signing.

**WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement in counterpart as of the date first written below.

**RONALD J. HOF, Chapter 7 Trustee for the bankruptcy estate of Foodservicewarehouse.com, LLC**

By:  _Ronald J. Hof_

Ronald J. Hof
Chapter 7 Trustee for the bankruptcy estate
of Foodservicewarehouse.com, LLC

Date:  _4/24/18_

**PRIDE Centric Resources, Inc. f/k/a PRIDE Marketing and Procurement, Inc.**

By:  _____

Karin W. Sugarman
President and CEO

Date:  _____

and delivery of this Settlement Agreement and may be used in lieu of the original Settlement Agreement for all purposes.

19.     Authorization. This Settlement Agreement will not be effective until approved by the United States Bankruptcy Court for the Eastern District of Louisiana. The signatories to this Settlement Agreement represent that they have the authority to bind the Parties on whose behalf they are signing.

**WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement in counterpart as of the date first written below.

**RONALD J. HOF, Chapter 7 Trustee for the bankruptcy estate of Foodservicewarehouse.com, LLC**

By:     _____
        Ronald J. Hof
        Chapter 7 Trustee for the bankruptcy estate
        of Foodservicewarehouse.com, LLC
Date:   _____

**PRIDE Centric Resources, Inc. f/k/a PRIDE Marketing and Procurement, Inc.**

By:     *Karin W. Sugarman*
        Karin W. Sugarman
        President and CEO
Date:   *April 24, 2018*

547

Accutemp
Admiral Craft
Advance Foodservice (Advance Tabco)
Alfa International
AllPoints
American Metalcraft
American Panel
American Table & Seating Mfg.
APW Wyott/Standex (APW Wyott)
Arctic Industries
Bally Refrigeration Boxes, Inc.
Balter Sales Company, Inc.
Berner Intl Corp
Beverage Air
Blodgett Oven Company
Browne Foodservice
Browne USA, Inc. d/b/a Brown Halco
Bunn-O-Matic
C.E. Holt Refrigeration
Cambro Manufacturing Company
Captive-Aire Systems, Inc.
Carlisle Foodservice Products
Carter Hoffman
Channel Manufacturing
Cleveland Range dba Manitowoc Ovens & Advnced Cooking
CMA Dishmachines
Continental Commercial
Continental National Refrigerator
Cooper-Atkins Corp
Dalton Logistics
Dexter Russell
Dormont Manufacturing Company
Eagle Group
Edlund Company
Equipex Ltd
Federal Industries
Focus Products Group/Focus Foodservice
Franklin Machine Products
Frymaster LLC d/b/a Frymaster Dean
G.E.T Enterprises
Garland Commercial Ranges Ltd dba Garland
Gates Manufacturing
Globe Food Equipment, Co.
Greenheck Fan (Accurex)
H Risch Inc
Hamilton Beach
Hatco Corporation

EXHIBIT
"A"

Hollowick Inc
Ice-O-Matic/Mile High Equipment d/b/a Ice-O-Matic
Imperial Brown
Imperial Manufacturing
Insiger
Intermetro Industries Corp
Jackson WWS, Inc.
Jim Strickler
Joe Sullo
John Boos
Kolpak
Krowne Metal Corp.
Lakeside Manufacturing
Magic Kitchen/Anets
Manitowoc Foodservice Group
Market Source LLC
Masterbilt
Merry Chef USA
Metal Master/Eagle
Mountain Sales & Service
Moyer Diebel
Nemco Food Equipment
Norlake
Oak Street Mfg
Olympic Storage
Oneida Ltd
Patriot Food Service Equipment, Inc.
Perlick Corp
Piper Products, Inc.
Pitco
PMP Capital
Richard Curtis/Richard Curtis Trust
Robot Coupe
Royal Industries
Salvajor Companies
San Diego Rest Supply
Scotsman Ice Systems
Southbend
Star Manufacturing (Holman)
Structural Concepts Corporation
T &S Brass & Bronze Works, Inc.
Tablecraft Products
The Coleman Group d/b/a San Jamar - Chef Revival
The Delfield Company LLC
Traulsen Hobart
True Food Service Equipment, Inc.
Turbo Air , Inc.
Update International/Crown Brands

Vertex China
Victory Refrigeration
Vollrath Company LLC
Vulcan Hart/Wolf
Waring (Conair Corp)
Wells Bloomfield, LLC
Winco
Zesto

### 548

1st Choice
A-1 Restaurnat
Alan Wiener
American Foodservice Equipment Co
Athony & Kathleen Lanza
Arrow Restaurant Equipment & Supplies
Balter Sales Company
Bar-Plex, Inc.
Big Gas Stoves LLC
Boston Showcase Company
Bushong Restaurant Equipment, Inc.
C. Caprara Food Service Equip
Castino's Restaurant Equipment & Supply
Cayard's, Inc.
CFED, LLC
Charles and Carol Session
Charles F. Schreiber, Sr.
Chef Supply
Classic Restaurant Supply, Inc.
Columbia Restaurant & Bar Supply Co.
Consolidated Food Equip Dist
Crazy Cousins Inc. DBA Shepherd's Food Equipment
Crown Restaurant Equip Ltd
Culi-Quip LLC
Curran Realty Family Limited Partnership
Curran-Taylor, Inc.
Curtis Marketing, Inc.
CVK Enterprises
DM Jeffers, Inc.
David & Debra Hummel
Davis Distributing LLC
Dennis A Braff
Denver Equip Co of Charlotte, Inc
Denver Restaurant Equipment Co LLC, DREC
DFE Investment Group
Discount Equip International
Durango Investments
Dutchess Restaurant Equipment Co Inc.
Economy Paper and Restaurant Supply

Edmund T Dougherty
Elloitt Yaffee
Fellers Fixtures, Inc
Fellers Food Services Equip LLC
Fetzer Company
Fetzer Partnership
Fox Restaurant Eqiup
G&S Partnership
Garage Investments, LLC
Gary Thiakos
Gerharz Equipment, Inc.
Gerharz Family LTD Partnership
GF Group LLC dba The Seattle Restaurant Store, Inc.
Gold Star Capital LLC
Gold Star Products
Goodwin Brothers Inc
Grand Restaurant Equipment & Design, Inc.
Helen H. Ryan
Index Rest Supply
Index Store Fixture Co
J&V Restaurant Supply & Refrigeration
J&R Restaurant Equipment Inc.
Jay C. Pattinger
Jeff Holt
Jim/James Strickler
John L Spicer III
Jose R. Poleo
Kamran & Company Inc.
Kavanaugh Restaurant Supply LLC
Kitchen Equipment & Supply CO
Kitchen Resources  LP
Leslie M. Birken and Melva A Birken Trust
Little Feller , Inc
Loubat Equipment Company, Inc.
Louis R. Polster Company
M&K Companies LLC
Main-Ford General Supply
Mark Ottenheimer Inter Vivos Declaration of Trust
Martin D. Seeman
Maui Hotel & Restaurant Supply, Inc.
McComas Sales Co, Inc.
Mes4 LLC
Michael Blackman &Assoc Inc.
Michael Flanter
Mike Schneider
MLK Development LLC
Monas & Co Ltd
National Restaurant Equip & Supply

Nevada Restaurant Supply
New & Nearly New Restaurant  Equipment
Owens Equipment Company Inc.
Paragon Food Equipment
Patrick Theodoros
R&D Food Services c/o Durable - Greg Morrissey
RDI Marketing LLC
Restaurant Euipment Gallery LLC
Restaurant Mega Mart LLC
Richard D. Adelman
Richard Wayne Curtis
Richard's Restaurant Supply Inc
RJ Phillips Imc
Robert Nelson Rice Revocable Living 5
Robert W Johnson Je.
Rose's Equipment and Supply Inc.
RSI Partners LLC RSI Carolina
Servco Equipment Co
Service Refrigeration dba Complete Restaurant Equip
SF Group, LLC
Shaleen Tillman
Sherwin Herzog & Warren B Herzog
Smalley Equipment
Stephen L Bernstein
Sub-Technologies, Inc
Sunflower Restaurant Supply Inc
Supreme Custom Fabricators Inc
Terry Woodard Enterprises Inc
The Dickler Corporation
The Horten Family Trust Est 1991
The Restaurant Store of Key West
The Willingham Co
Thomas Bell
Tim Carroll
Tod B Firotto Trust
Tom Bell Corp
Tri-City Equip Company Inc.
Trust Account fo R Laughlin
Victor McGrady
Wallace E. Ryan
William J Mathias
Wilson Restaurant Equipmeny Inc
Windrock Enterprises Inc
Zepole Restaurant Supply Co